KNOX COUNTY BOARD OF COMMISSIONERS, APPELLEES,
*v.* KNOX COUNTY ENGINEER, APPELLANT.

[Cite as *Knox Cty. Bd. of Commrs. v. Knox Cty. Engineer,*
109 Ohio St.3d 353, 2006-Ohio-2576.]

(No. 2005–0044—Submitted November 8, 2005—Decided June 7, 2006.)

O'DONNELL, J.

{¶ 1} The issue presented for our consideration in this appeal concerns whether the Knox County Engineer's share of the cost of the county's liability insurance can be paid from moneys restricted by the Ohio Constitution to highway purposes.

{¶ 2} In this matter, James Henry, the Knox County Engineer, appeals from a decision of the Fifth District Court of Appeals, which held that payment of the county engineer's share of the liability insurance premium for Knox County is a "cost of operation" of the county engineer's office within the meaning of R.C.

315.12 and that the expenditure thereof is not prohibited by the Ohio Constitution.

{¶ 3} However, because the Ohio Constitution restricts the expenditure of moneys derived from the registration, operation, and use of vehicles and fuel to highway purposes, and because liability insurance for the county engineer's office for the years 2002 and 2003 has not been shown to constitute a highway purpose or shown to be directly connected to such a purpose, we are compelled to reverse the judgment of the court of appeals.

{¶ 4} The history of this case reveals that Knox County participates in the County Risk Sharing Authority ("CORSA"), a risk-sharing insurance pool for Ohio counties created pursuant to R.C. 2744.08. For the years 2000 and 2001, the Knox County Commissioners assessed the Knox County Engineer a proportionate share of the CORSA liability insurance cost, and the engineer paid those assessed amounts. However, for the years at issue here, 2002 and 2003, the commissioners again assessed the engineer a proportionate share of the CORSA liability insurance costs in the aggregate sum of $46,926.73, but he declined to pay them on the advice of counsel that the constitutionally restricted funds could be used only for highway purposes.

{¶ 5} Subsequently, on September 8, 2003, the Knox County Commissioners filed a declaratory judgment action in common pleas court seeking both a determination that the invoices they sent to the county engineer could be paid without violating the state Constitution and a mandatory injunction to compel the engineer to pay them. In that complaint, the commissioners alleged in paragraphs 16 and 21 that all appropriations for the Knox County Engineer's Office came from restricted funds. With no facts in dispute, both parties moved for summary judgment. The trial court entered judgment in favor of the county commissioners, finding that the CORSA charges were a cost of operation of the engineer's office. The engineer appealed that decision to the Fifth District Court of Appeals, which affirmed the judgment of the trial court based on its determination that the CORSA premiums constituted a cost of operation of the engineer's office and could be paid without violating the Constitution.

{¶ 6} The engineer then appealed to our court, asserting that payment of the invoices would violate the Ohio Constitution because the engineer's office had been entirely funded by vehicle license and fuel taxes, which are restricted funds in accordance with Section 5a, Article XII of the Constitution and which can be expended only for highway purposes. We granted discretionary review and now consider the propriety of this expenditure.

{¶ 7} Important to our consideration of this appeal is the provision of the Ohio Constitution, Section 5a, Article XII,[1] and the applicable portion of R.C. 315.12,

---

1. Section 5a, Article XII provides as follows: "No moneys derived from fees, excises, or license taxes relating to registration, operation, or use of vehicles on public highways, or to fuels used for

which authorizes payment of two-thirds of the cost of operation of the county engineer's office from these funds.[2]

{¶ 8} While the engineer maintains that he is constitutionally restricted from paying the CORSA invoices, the commissioners argue that the constitutional restriction on expenditure does not preclude him from paying his share of the CORSA premiums, because R.C. 315.12(A) directs that two-thirds of the cost of operation of the office of the county engineer shall be paid from these funds, and the CORSA insurance premiums at issue constitute a cost of operating that office.

{¶ 9} The issue, therefore, presented for our consideration here concerns whether the invoices for the CORSA insurance premiums for the years 2002 and 2003 submitted by the Knox County Commissioners to the county engineer can be paid out of the restricted funds of the engineer.

{¶ 10} In *Grandle v. Rhodes* (1959), 169 Ohio St. 77, 8 O.O.2d 40, 157 N.E.2d 336, we stated in our syllabus that "Section 5a, Article XII of the Constitution of Ohio closely restricts the expenditure of the fees and taxes received in relation to vehicles using the public highways to purposes *directly connected with* the construction, maintenance and repair of highways and the enforcement of traffic laws * * *." (Emphasis added.) There we held that the restricted funds could not be used to pay fees of a taxpayer's lawyers who successfully sued to block the use of highway funds for a preliminary study regarding the contemplated construction of a parking garage underneath the statehouse.

{¶ 11} In this case, the record before us contains no evidence that payment of the CORSA insurance premiums is for a highway purpose or is directly connected with construction, maintenance, and repair of the highways or the enforcement of traffic laws. Thus, because the county engineer's budget has been funded from vehicle-license and fuel taxes, and the expenditure of these funds is constitutionally restricted, the county engineer may expend these moneys only for the

---

propelling such vehicles, shall be expended for other than costs of administering such laws, statutory refunds and adjustments provided therein, payment of highway obligations, costs for construction, reconstruction, maintenance and repair of public highways and bridges and other statutory highway purposes, expense of state enforcement of traffic laws, and expenditures authorized for hospitalization of indigent persons injured in motor vehicle accidents on the public highways."

2. In its entirety, R.C. 315.12(A) states: "Two thirds of the cost of operation of the office of county engineer, including the salaries of all of the employees and the cost of maintenance of such office as provided by the annual appropriation made by the board of county commissioners for such purpose, shall be paid out of the county's share of the fund derived from the receipts from motor vehicle licenses, as distributed under section 4501.04 of the Revised Code, and from the county's share of the fund derived from the motor vehicle fuel tax as distributed under section 5735.27 of the Revised Code."

purposes listed in Section 5a, Article XII of the Constitution or purposes directly connected thereto. Despite the mandate of R.C. 315.12(A) that two-thirds of the cost of operation of the engineer's office shall be paid from these restricted funds, the record before us does not contain any evidence regarding whether the specific CORSA insurance premiums at issue here are "directly connected" with highway purposes. See *Grandle v. Rhodes*, supra. However, if the record contained evidence that the CORSA premiums pertained to highway purposes or were directly related thereto, or if the engineer's budget did not consist wholly of restricted funds, our outcome might not be the same.

{¶ 12} Further, in *Madden v. Bower* (1969), 20 Ohio St.2d 135, 49 O.O.2d 469, 254 N.E.2d 357, we considered a different issue, but nonetheless in a footnote cautioned that "[w]e are not to be understood as saying here, or in the case of *Bd. of County Commrs. of Scioto County v. Scioto County Budget Comm.* [1969], 17 Ohio St.2d 39 [46 O.O.2d 203], 244 N.E.2d 888, that a board of county commissioners may ignore the fact that certain duties of the county engineer, the cost of which is necessarily included in the cost of operation of his office and hence would appear in his budget for that office, involve functions unrelated to the planning, construction, improvement or repair of roads, streets and highways. These 'non-highway' duties include supervision of such county functions as surveying and tax-map drafting and assistance to the board in connection with such improvement as waste disposal works, ditches, sanitary sewers, storm drainage works and sidewalks. The list is not intended to be exhaustive.

{¶ 13} "Thus, the provisions of Revised Code Sections 4501.04 and 5735.27, as well as Section 5a, Article XII of the Ohio Constitution, must be adhered to in appropriating 'road tax' funds to defray the remaining one-third of the cost of the office of the engineer." Id. at 140, 49 O.O.2d 469, 254 N.E.2d 357, fn. 2.

{¶ 14} Based on the foregoing, we conclude that the Ohio Constitution restricts the expenditure of moneys derived from the registration, operation, or use of vehicles on public highways and from fuels used to propel such vehicles to the specific highway purposes listed in Section 5a, Article XII, or to purposes directly connected thereto.

{¶ 15} Thus, in this case, because the engineer's budget consists of only restricted funds, and because the record before us contains no evidence that the invoices for the CORSA insurance premiums for the years 2002 and 2003 submitted by the Knox County Commissioners to the county engineer are for highway purposes or are "directly connected" with such highway purposes, Section 5a, Article XII of the state Constitution precludes the engineer from paying the CORSA invoices at issue in this case, and an injunction will not lie to

compel him to do so. For these reasons, the judgment of the appellate court to the contrary is reversed.

Judgment accordingly.

MOYER, C.J., RESNICK, O'CONNOR and LANZINGER, JJ., concur.

PFEIFER and LUNDBERG STRATTON, JJ., concur in part and dissent in part.

---

**PFEIFER, J., concurring in part and dissenting in part.**

{¶ 16} I concur in the syllabus; it simply and generally reasserts the constitutional mandate of Section 5a, Article XII of the Ohio Constitution. I dissent from the judgment because the phrase "other statutory highway purposes" in Section 5a has more significance than the majority opinion credits it with. See *Steele, Hopkins & Meredith Co. v. Miller* (1915), 92 Ohio St. 115, 120, 110 N.E. 648 (effect should be given to every part of a constitution); *State ex rel. Maurer v. Sheward* (1994), 71 Ohio St.3d 513, 521, 644 N.E.2d 369.

{¶ 17} When it enacted R.C. 315.12(A), the General Assembly was aware of Section 5a. The General Assembly knew that R.C. 315.12(A) was on its face contrary to Section 5a, except for the term "other statutory highway purposes." See *Steele*, 92 Ohio St. at 126, 110 N.E. 648, quoting Cooley, Constitutional Limitations (7th Ed.1903) 257 (courts " 'must assume that legislative discretion has been properly exercised' "). I conclude that the General Assembly intended R.C. 315.12(A) to be considered as an "other statutory highway purpose[ ]"; there is no other way for R.C. 315.12(A) to pass constitutional muster.

{¶ 18} Insurance is a "cost of operation of the office of county engineer" within the meaning of R.C. 315.12(A). See 1997 Ohio Atty.Gen.Ops. No. 97–020; 1994 Ohio Atty.Gen.Ops. No. 94–031. I conclude that the payment of insurance from funds "derived from fees, excises, or license taxes relating to registration, operation, or use of vehicles" is not contrary to Section 5a, Article XII of the Ohio Constitution because such payment is authorized by a "statutory highway purpose[ ]," namely, R.C. 315.12(A).

LUNDBERG STRATTON, J., concurs in the foregoing opinion.

---

**LUNDBERG STRATTON, J., concurring in part and dissenting in part.**

{¶ 19} I respectfully concur in the syllabus but dissent from the majority's application of that syllabus and subsequent conclusion that liability insurance is not related to the function of operating Ohio's highways.

{¶ 20} This case turns on our analysis of the phrase "relating to" as it appears in Section 5(a), Article XII of the Ohio Constitution. That section, in its entirety, states:

{¶ 21} "No moneys derived from fees, excises, or license taxes *relating to* registration, operation, or use of vehicles on public highways, or to fuels used for propelling such vehicles, shall be expended for other than costs of administering such laws, statutory refunds and adjustments provided therein, *payment of highway obligations,* costs for construction, reconstruction, maintenance and repair of public highways and bridges *and other statutory highway purposes,* expense of state enforcement of traffic laws, *and expenditures authorized for hospitalization of indigent persons injured in motor vehicle accidents on the public highways.*" (Emphasis added.)

{¶ 22} R.C. 315.12, our prior case law, and common sense tell us that liability insurance premiums are "relat[ed] to" the construction, maintenance, and repair of public highways.

{¶ 23} Section 5(a), Article XII of the Ohio Constitution restricts the use of certain fees and taxes to highway purposes, but the Constitution specifically includes language that allows for "other statutory highway purposes," including "expenditures authorized for hospitalization of indigent persons injured in motor vehicle accidents on the public highways" and "payment of highway obligations." If the Ohio Constitution allows for the funds to be used for direct payments to accident victims, surely a payment for liability insurance to cover those costs (far less costly than the full cost of hospitalization) also fits under Section 5(a) uses.

{¶ 24} In addition, the legislature has already defined what "other statutory highway purposes" are in R.C. 315.12.

{¶ 25} R.C. 315.12(A) is the legislative determination of what "soft costs" are necessary to operate the county engineer's office. It states that two-thirds of the office's expenses may be paid from this fund as representing that percentage of the engineer's duties related directly to highways. The legislature has made the public policy determination of what constitutes "other statutory highway purposes." In addition, in R.C. 2744.081, the legislature has also allowed counties to allocate costs for participation in a joint self-insurance pool.

{¶ 26} This court has already considered the application of R.C. 315.12. In *Scioto Cty. Bd. of Commrs. v. Scioto Cty. Budget Comm.* (1969), 17 Ohio St.2d 39, 46 O.O.2d 203, 244 N.E.2d 888, the court ruled: "This section [R.C. 315.12] means that at least two-thirds of the cost of the office of the county engineer must be paid from motor vehicle license and fuel tax revenues," impliedly upholding the two-thirds allocation as constitutional. In addition, in *Madden v. Bower* (1969), 20 Ohio St.2d 135, 138–139, 49 O.O.2d 469, 254 N.E.2d 357, the court found that at least two-thirds of the cost of employee health insurance premiums for the county

engineer's office must be paid from these funds. The cautionary footnote in *Madden* clearly refers to nonhighway functions such as surveying and sewer improvements, not to highway-related functions such as insurance, which is indeed the entire issue in *Madden*. Id. at 361, 49 O.O.2d 469, 254 N.E.2d 357, fn. 2. I fail to see the distinction between employer health-insurance premiums and liability insurance premiums.

{¶ 27} Common sense and the dealings of everyday business also demonstrate that liability insurance is a necessary cost of doing business in today's world, especially in the high-risk area of highway construction.

{¶ 28} It is merely a math calculation to determine what portion of the CORSA liability insurance premium is attributable to the engineer's office. In fact, that calculation has already been made; the county engineer's share of the premiums is based on the loss experiences and potential exposures attributable to that office. The appellees, Knox County Commissioners, now assert that at least two-thirds of that premium shall be paid from the highway funds pursuant to R.C. 315.12.

{¶ 29} The Constitution allows the use of these funds to pay hospital bills for indigent persons injured on our highways, but the majority of this court does not allow those same funds to be used for liability insurance to cover those same costs. I cannot agree with this analysis.

{¶ 30} Therefore, I respectfully dissent, and I would affirm the judgment of the court of appeals to the extent that two-thirds of the premium should be paid from the motor vehicle fees and taxes.

PFEIFER, J., concurs in the foregoing opinion.

---

Peck, Shaffer & Williams, L.L.P., Thomas A. Luebbers, and Erin A. Sutton, for appellees.

Bricker & Eckler, L.L.P., Luther L. Liggett, and Maria J. Armstrong, for appellant.

Chester, Willcox & Saxbe, L.L.P., John W. Bentine, and Gerhardt A. Gosnell II, urging affirmance for amici curiae, County Commissioners' Association of Ohio and County Risk Sharing Authority.

Schottenstein, Zox & Dunn and Roger L. Sabo, urging reversal for amicus curiae, Ohio Contractors Association.

Frederick A. Vierow, urging reversal for amicus curiae, County Engineers Association of Ohio.